Per Curiam.
 

 Defendant Auto Club Insurancé Association (acia) appeals as of right the trial court’s judgment awarding plaintiff, Charles Rice, $64,217.65 in no-fault personal injury protection (pip) benefits after the trial court granted plaintiff’s motion for summary disposition pursuant to MCR 2.116(C)(10). Rice cross appeals as of right, challenging the trial court’s decision to deny him attorney fees under MCL
 
 *27
 
 500.3148(1). We affirm in part, reverse in part, and remand for judgment to be entered in favor of ACIA.
 

 I. BASIC FACTS AND PROCEDURAL HISTORY
 

 Defendant Ford Motor Company employed Rice, who drove Ford’s fuel truck to supply diesel fuel to other equipment. One of the pieces of equipment that Rice fueled was Rouge Steel Company’s Klein steel hauler, a large, motorized machine, mounted on wheels, that carries 350 tons of molten metal and a one-hundred-ton ladle. The Klein steel hauler operator uses the machine to transport full and empty ladles between buildings within the work area, never on a highway.
 

 As on other days, Rice had to fuel the Klein steel hauler on March 19, 1997. Rice approached the Klein steel hauler with the fueling truck. Rice and the Klein steel hauler operator flashed their lights at each other to indicate that they were ready to proceed with fueling. Rice set the parking brake on the fuel truck, stepped out of the vehicle, and removed a ladder from the J-hooks. He took the ladder to the Klein steel hauler, where he rested it near the fuel tank. Rice turned on the fuel pump and removed the hose from the fueling truck. At this time, the fuel truck was running in order to operate the pump for the fuel. Rice ascended the ladder with the hose, unscrewed the cap for the fueling port, inserted the hose in the fueling port, and began distributing the diesel fuel with the handle regulator. As Rice described it, the fuel system has a “little catch where you set the thing,” similar to the latch setting at some gas stations. Ordinarily, the Klein steel hauler fueling process took about twenty to thirty minutes.
 

 
 *28
 
 As Rice was “putting the fuel cap down, getting ready to screw the fuel cap on,” he saw the headlights of the Klein steel hauler come on and heard the engine “rev up.” The last thing Rice remembered before he awoke on the ground was having his right hand on the fuel cap on the tank and his left hand holding the hose onto the bar of the ladder. Rice, who did not remember falling, regained consciousness to discover that the Klein steel hauler was gone. The Klein steel hauler operator ran toward Rice and apologized, explaining that he had fallen asleep and forgotten that Rice was fueling the machine. Rice received worker’s compensation benefits for his serious physical injuries.
 

 Rice then sued to recover no-fault pip benefits from Rouge Steel, Ford, and acia, the no-fault insurer for Rice’s personal automobile. The three defendants moved for summary disposition under MCR 2.116(C)(8) and (10), raising several statutory arguments. Defendants first claimed that Rice did not sustain an accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle as required in MCL 500.3105(1). Second, they claimed that the way Rice used the Klein steel hauler was unrelated to the vehicle’s transportationai function because the parked fueling truck was operating merely as a fueling station. Consequently, the parked vehicle exceptions in MCL 500.3106 that might otherwise allow coverage did not apply because Rice’s injury did not come as a direct result of physical contact with equipment permanently mounted on the fueling truck and no loading or unloading was taking place. Finally, they claimed that Rice could not recover under MCL
 
 *29
 
 500.3106(2) because he was entitled to worker’s compensation benefits and there was no evidence that “another vehicle” was involved in the accident.
 

 The trial court denied defendants’ motion, concluding that whether Rice was in contact with a permanently attached hose and was engaged in unloading remained material and disputed. The trial court also reasoned that the Klein steel hauler could be considered a “vehicle” within the meaning of MCL 500.3106(2)(b), which meant that receiving worker’s compensation did not prevent Rice from receiving no-fault pip benefits. Subsequently, the parties stipulated the dismissal of Rouge Steel and Ford as parties.
 

 Rice also moved for summary disposition, though under MCR 2.116(C)(9) and (10), essentially making the same arguments he had asserted in response to defendants’ motion for summary disposition: the fuel truck was a motor vehicle being used as a motor vehicle because refueling is inherently related to all vehicles’ transportational function; the circumstances in this case fit within MCL 500.3106(l)(b) because he was in direct contact with equipment permanently mounted to a motor vehicle at the time of the accident; or the circumstances in this case fell within MCL 500.3106(2)(a) because he was in the process of unloading a motor vehicle at the time of the accident. Further, Rice claimed that receiving worker’s compensation benefits did not bar the instant lawsuit because of language in MCL 500.3106(2)(a). The trial court granted Rice’s motion, determining that there was no genuine dispute concerning whether “plaintiff was involved in the use of a motor vehicle as a motor vehicle including unloading and in connection with another vehicle being the Klein.” Having stipulated
 
 *30
 
 with regard to the facts, the parties then agreed to allow the trial court to decide the amount of the judgment. The trial court entered a judgment for Rice in the total amount of $64,217.65, but denied Rice’s request for attorney fees pursuant to MCL 500.3148(1).
 

 H. SUMMARY DISPOSITION
 

 A, STANDARD OF REVIEW
 

 We review de novo a trial court’s decision to grant a motion for summary disposition.
 
 [1]
 
 This standard of review is also particularly relevant because we must construe and apply a number of statutes to resolve whether the trial court erred in granting plaintiff’s motion for summary disposition.
 
 [2]
 

 B. LEGAL STANDARDS
 

 In ruling on Rice’s motion for summary disposition, the trial court cited both MCR 2.116(C)(9) and (10). In fact, the trial court’s statements on the record at the hearing on the motion for summary disposition make clear that it actually granted Rice’s motion pursuant to subrule C(10). A motion for summary disposition under MCR 2.116(C)(10) tests the factual underpinnings of a claim other than an amount of damages, and the deciding court considers all the evidence, affidavits, pleadings, admissions, and other
 
 *31
 
 information available in the record.
 
 [8]
 
 The deciding court must look at all the evidence in the light most favorable to the nonmoving party, who must be given the benefit of every reasonable doubt.
 
 [3]
 

 [4]
 
 Only if there is no factual dispute, making the moving party entitled to judgment as a matter of law, would summary disposition be appropriate.
 
 [5]
 
 However, the nonmoving party must present more than mere allegations in order to demonstrate that there is a genuine issue of material fact in dispute, making trial necessary.
 
 [6]
 

 The process of applying a statute intersects with this legal standard for summary disposition at the point where the trial court considers whether the moving party is entitled to judgment as a matter of law. In other words, the trial court must understand what the law is in order to determine which party is entitled to judgment when there is a settled factual record.
 
 [7]
 
 These rules of inteipretation and application are well-known:
 

 A fundamental rule of statutory construction is to ascertain the purpose and intent of the Legislature in enacting the provision.. . . The first criterion in determining intent is the specific language of the statute. If the statutory language is clear and unambiguous, judicial construction is
 
 *32
 
 neither required nor permitted and courts must apply the statute as 'written.1
 
 [8]
 
 1
 

 As the Supreme Court in
 
 Macomb Co Prosecutor v Murphy
 

 [9]
 

 stated:
 

 In considering a question of statutory construction, this Court begins by examining the language of the statute. We read the statutory language in context to determine whether ambiguity exists. If the language is unambiguous, judicial construction is precluded. We enforce an unambiguous statute as written. Where ambiguity exists, however, this Court seeks to effectuate the Legislature’s intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished.1
 
 [10]
 
 1
 

 Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used.*
 
 [11]
 
 Further, the language must be applied as written.
 
 [12]
 
 Accordingly, we apply these rules to the sections of the no-fault statutes at issue in this case in order to determine whether the trial court erred in concluding that the facts left no material dispute concerning whether Rice was entitled to no-fault PIP benefits.
 

 
 *33
 
 C. NO-FAULT PEP BENEFITS GENERALLY
 

 Like most statutory schemes regarding insurance, the no-fault provision dealing with pip benefits is somewhat complex. The starting point for any analysis is MCL 500.3105(1), which states that “[ujnder personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.” The key language in MCL 500.3105(1) splits the analysis for determining whether no-fault pip benefits are available into two broad steps. In the first step, we must determine whether the injury at issue is covered, i.e., that it is “accidental” and “bodily” and “aris[es] out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . ...” In the second step we must determine whether coverage for injuries that fit this definition is, nevertheless, excluded under other provisions in the no-fault act and whether an exception to an exclusion would save the claim.
 

 For a short time,
 
 Putkamer v Transamerica Ins Corp of America,
 

 [13]
 

 controlled eligibility for pip benefits, and suggested that the analysis described above was unnecessary when the motor vehicle at issue was parked. Instead of examining the facts of the case in light of the language in MCL 500.3105(1),
 
 Putkamer
 
 instructed that “the determination whether the injury is covered by the no-fault insurer generally is governed by the provisions of subsection 3106(1)
 
 *34
 
 alone,”
 
 [14]
 
 although the Supreme Court acknowledged the language of MCL 500.3105(1) in the three-part test it articulated.
 
 [15]
 
 The Court, however, retreated from this alternative analytical approach when, in
 
 McKenzie v Auto Club Ins Ass’n,
 

 [16]
 

 it reaffirmed the principle that “an injury [must] be closely associated with the transportational function of a vehicle before coverage is triggered . . . .”
 
 [17]
 
 More recently, in
 
 Morosini v Citizens Ins Co of America (After Remand),
 

 [18]
 

 the Court endorsed
 
 McKenzie
 
 and rejected the premise that no-fault pip benefits are available when a motor vehicle is “incidentally involved” in the circumstances giving rise to an injury. Thus, from our perspective, the two-step analysis provided in the plain language of MCL 500.3105(1) applies in this case.
 

 D. STEP ONE: MCL 500.3105
 

 There is no dispute that the injuries Rice sustained were both “accidental”
 
 [19]
 
 and “bodily” within the meaning of MCL 500.3105(1). Nor is there a question that the fueling truck fit the definition of a motor vehicle in MCL 500.3101(2)(e). Acia, however, contends that Rice was not using a motor vehicle as a motor vehicle at the time of the accident. Because the fuel truck was acting as a fueling station at the time of the accident, acia argues, it was too far removed
 
 *35
 
 from its transportational function to be considered more than incidentally involved in the accident. Rice counters that providing fuel for other vehicles is inherently related to the transportational function of a motor vehicle; without fuel trucks like the one he was operating, Rice suggests, no one could ever operate a motor vehicle as a motor vehicle. Rice also notes that the Supreme Court in
 
 McKenzie
 
 commented that “a vehicle need not be moving at the time of an injury for the injury to arise out of the use of a motor vehicle as a motor vehicle, i.e., out of its transportational function.”
 
 [20]
 

 The inherent value of fueling trucks is manifest. However, we do not agree with Rice that the tangential relationship between providing fuel to other vehicles and transporting the fuel in a motor vehicle means that every act of refueling is necessarily related to the transportational function of the motor vehicle carrying the fuel. That line of reasoning is an attempt to resurrect
 
 Bialochowski v Cross Concrete Pumping Co
 

 [21]
 

 a case a majority of the justices of the Supreme Court soundly criticized and explicitly renounced in
 
 McKenzie
 

 [22]
 

 In
 
 Bialochowski,
 
 the plaintiff sued for no-fault pip benefits when the pump on a parked and stabilized cement truck that was pouring cement in an elevated area exploded, causing a boom to fall on him.
 
 [23]
 
 The
 
 Bialochowski
 
 Court noted that motor vehicles are designed and intended to be used for many different
 
 *36
 
 purposes and, as long as the injury occurred while the vehicle was being used for one of these intended purposes, the motor vehicle fits within the definition in MCL 500.3105(1).
 
 [24]
 
 The
 
 McKenzie
 
 Court, however, declared this multi-purpose theory of motor vehicle use “antithetical to the language of § 3105,”
 
 [25]
 
 essentially overruling contrary precedent like
 
 Gordon v Allstate Ins Co.
 

 [26]
 

 No one contests that the core purpose of a fueling truck is to transport fuel to other machinery, like the Klein steel hauler. Yet, there is no practical difference between pumping fuel and pumping cement when it comes to examining the underlying activities of the motor vehicle. Even if we were to agree that fuel has a special relationship to a motor vehicle’s transporta-tional function, we see no indication in the language of MCL 500.3105 that a motor vehicle’s use as a motor vehicle depends at all on the substance being transported. If it did, the
 
 McKenzie
 
 Court might have seen the inherent relationship between cement trucks and road construction, roads being specially related to the transportational function of motor vehicles. The Court did not, however, identify any significance in the load that might be carried in a motor vehicle involved in an injury. In other words, the no-fault act does not make the character of the load carried in or delivered by a motor vehicle relevant to whether a motor vehicle was used as a motor vehicle at the time of an accident leading to bodily injury.
 

 
 *37
 
 We axe mindful that a motor vehicle need not necessarily be in motion, nor does an injured individual necessarily need be a passenger in the motor vehicle, for it to be considered in use as a motor vehicle within the meaning of MCL 500.3105(1). Individuals walking past a parked vehicle and suffering injury because of repairs being performed on the vehicle,
 
 [27]
 
 rescuers injured while saving occupants from vehicles wrecked while in operation,
 
 [28]
 
 and others have been found to be entitled to no-fault PIP benefits. Indeed, MCL 500.3106 provides explicit exceptions to the general exclusion of coverage for parked vehicles that reflect special circumstances in which a parked vehicle is distinguishable from other nonmoving objects.
 
 [29]
 

 Nevertheless, the problem in this case is that at the time Rice sustained his injuries, he had virtually no physical or practical connection to the fueling truck. He was standing on a ladder that was leaning against the Klein steel hauler. The Klein steel hauler, not the fuel truck, moved, causing him to fall. That he was holding the fuel hose from the fuel truck at the time he fell was completely coincidental. Critically, Rice does not claim that the Klein steel hauler, which was directly involved in his accident, was a motor vehicle used as a motor vehicle. Nor is it apparent that the Klein steel hauler was designed for operation on a highway or was actually operating on a highway at the time of the accident in order to fit the definition
 
 *38
 
 of a motor vehicle under the no-fault act.
 
 [30]
 
 We know that the circumstances present in
 
 Bialochowski
 
 are insufficient to warrant no-fault PIP benefits. Indeed, the circumstances in this case are even less legally compelling than
 
 Bialochowski
 
 because the motor vehicle in this case (the fuel truck), unlike the motor vehicle in
 
 Bialochowski
 
 (the cement truck), did not malfunction or otherwise cause Rice’s injuries. Under the facts here, we are satisfied that the fuel truck’s relationship to the accident as a whole was merely coincidental and that its transportational function had no connection to the accident at all. Thus, the fuel truck was not being used as a motor vehicle at the time of the accident.
 

 Because Rice failed to pass the analysis in step one, we need not proceed to step two in which we would determine whether the parked vehicle exclusions to no-fault pip benefits barred coverage in this case or if any of the exceptions to the exclusions would save coverage.
 

 HI. ATTORNEY FEES
 

 A. STANDARD OF REVIEW
 

 Rice claims that he was entitled to attorney fees pursuant to MCL 500.3148(1) because acia unreasonably denied him coverage. Therefore, he contends, the trial court erred in denying him these fees as part of his award. We review a trial court’s decision that an insurer did not unreasonably refuse or deny pay
 
 *39
 
 ment of benefits to determine if the trial court committed clear error.
 
 [31]
 

 B. UNREASONABLE DELAY
 

 MCL 500.3148(1) provides:
 

 An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney’s fee shall be a charge against the insurer in addition to the benefits recovered,
 
 if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.
 

 [32]
 

 }
 

 Though the trial court granted Rice’s motion for summary disposition, signaling its view that he had proper grounds for benefits, it nonetheless concluded that Rice was not entitled to attorney fees because there was a legitimate dispute concerning the statutory requirements in this case. “When determining whether attorney fees are warranted for an insurer’s delay to make payments under the no-fault act, a delay is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty.”
 
 [33]
 
 Our analysis leading to the opposite, substantive result in this case only underscores that a real statutory dispute existed. Thus, the trial court did not clearly err in making this finding and denying Rice attorney fees.
 

 
 *40
 
 Affirmed in part, reversed in part, and remanded for judgment to be entered in favor of acia. We do not retain jurisdiction.
 

 [1]
 

 Spiek v Dep’t of Transportation,
 
 456 Mich 331, 337; 572 NW2d 201 (1998).
 

 [2]
 

 See
 
 Adams v Linderman,
 
 244 Mich App 178, 184; 624 NW2d 776 (2000).
 

 [3]
 

 MCR 2.116(G)(5);
 
 Smith v Globe Life Ins Co,
 
 460 Mich 446, 454; 597 NW2d 28 (1999).
 

 [4]
 

 Atlas Valley Golf & Country Club, Inc v Village of Goodrich,
 
 227 Mich App 14, 25; 575 NW2d 56 (1997).
 

 [5]
 

 See
 
 Auto Club Ins Ass’n v Sarate,
 
 236 Mich App 432, 437; 600 NW2d 695 (1999).
 

 [6]
 

 MCR 2.116(G)(4);
 
 Etter v Michigan Bell Telephone Co,
 
 179 Mich App 551, 555; 446 NW2d 500 (1989).
 

 [7]
 

 See, generally,
 
 Kent v Alpine Valley Ski Area, Inc,
 
 240 Mich App 731, 737-744; 613 NW2d 383 (2000) (interpreting statute in order to determine whether trial court erred in granting summary disposition).
 

 [8]
 

 Id.
 
 at 736 (citations omitted).
 

 [9]
 

 Macomb Co Prosecutor v Murphy,
 
 464 Mich 149, 158; 627 NW2d 247 (2001).
 

 [10]
 

 Citations omitted.
 

 [11]
 

 Phillips v Jordan,
 
 241 Mich App 17, 22, n 1; 614 NW2d 183 (2000), citing
 
 Western Michigan Univ Bd of Control v Michigan,
 
 455 Mich 531, 539; 565 NW2d 828 (1997).
 

 [12]
 

 Camden v Kaufman,
 
 240 Mich App 389, 394; 613 NW2d 335 (2000);
 
 Ahearn v Bloomfield Charter Twp,
 
 235 Mich App 486, 498; 597 NW2d 858 (1999).
 

 [13]
 

 Putkamer v Transamerica Ins Corp of America,
 
 454 Mich 626; 563 NW2d 683 (1997).
 

 [14]
 

 Id.
 
 at 632.
 

 [15]
 

 Id.
 
 at 635-636.
 

 [16]
 

 McKenzie v Auto Club Ins Ass’n,
 
 458 Mich 214; 580 NW2d 424 (1998).
 

 [17]
 

 Id.
 
 at 220.
 

 [18]
 

 Morosini v Citizens Ins Co of America (After Remand),
 
 461 Mich 303, 310; 602 NW2d 828 (1999).
 

 [19]
 

 See MCL 500.3105(4).
 

 [20]
 

 McKenzie, supra
 
 at 219, n 6.
 

 [21]
 

 Bialochowski v Cross Concrete Pumping Co,
 
 428 Mich 219; 407 NW2d 355 (1987).
 

 [22]
 

 McKenzie, supra
 
 at 223-225.
 

 [23]
 

 Bialochowski, supra
 
 at 222-223.
 

 [24]
 

 Id.
 
 at 228-229.
 

 [25]
 

 McKenzie, supra
 
 at 224.
 

 [26]
 

 Gordon v Allstate Ins Co,
 
 197 Mich App 609; 496 NW2d 357 (1992).
 

 [27]
 

 See
 
 McMullen v Motors Ins Corp,
 
 203 Mich App 102, 103, 105-107; 512 NW2d 38 (1993).
 

 [28]
 

 See
 
 McKenney v Crum & Forster,
 
 218 Mich App 619, 623-624; 554 NW2d 600 (1996).
 

 [29]
 

 See
 
 Miller v Auto-Owners Ins Co,
 
 411 Mich 633, 639-641; 309 NW2d 544 (1981).
 

 [30]
 

 See MCL 500.3101(2Xe).
 

 [31]
 

 See
 
 Attard v Citizens Ins Co of America, 231
 
 Mich App 311, 317, 318; 602 NW2d 633 (1999).
 

 [32]
 

 Emphasis added.
 

 [33]
 

 Attard, supra
 
 at 317.