LANIGAN v HURON VALLEY HOSPITAL, INC

Docket No. 279799. Submitted November 4, 2008, at Detroit. Decided March 3, 2009, at 9:05 a.m.

Jayne and Greg Lanigan brought a medical malpractice action in the Oakland Circuit Court against Huron Valley Hospital, Inc., and Steven D. Belen, D.O., alleging, in part, that as a result of the defendants' breach of the applicable standard of care Jayne Lanigan (hereafter plaintiff) was required to have a heart transplant in lieu of bypass surgery. The plaintiff advanced both a traditional medical malpractice claim and a claim that the malpractice resulted in a lost opportunity to achieve a better result. The court, Denise Langford Morris, J., granted the defendants' motion for summary disposition, which focused entirely on the lost-opportunity claim, without addressing the traditional medical malpractice claim, after determining that the plaintiff did not suffer a greater than 50 percent loss of an opportunity to achieve a better result, as required by MCL 600.2912a(2). The plaintiff appealed.

The Court of Appeals *held*:

1. The general statistical evidence that the trial court considered was not limited to persons similarly situated to the plaintiff. Without some connection to the plaintiff, the evidence was, in the context offered and standing alone, only marginally relevant and was an improper basis upon which to grant summary disposition.

2. MCL 600.2912a(2) provides that a plaintiff cannot recover for the loss of an opportunity to survive or achieve a better result unless the opportunity was greater than 50 percent. The difference between the opportunity before the malpractice and the opportunity after the malpractice must be greater than 50 percent, that is, the alleged malpractice must have reduced the opportunity by more than 50 percent in order for the plaintiff to recover.

3. Because of the conflicting interpretations of the statistics in this case, a genuine issue of material fact exists with regard to the meaning of the statistics. Summary disposition was improperly granted and the order granting summary disposition must be reversed.

4. The plaintiff sufficiently pleaded both an ordinary medical malpractice claim and a lost-opportunity claim in her complaint. It was error to dismiss the case solely on the basis of the lost-opportunity claim without considering the ordinary medical malpractice claim. The case must be remanded to the trial court for further proceedings regarding the traditional medical malpractice claim.

Reversed and remanded.

GLEICHER, P.J., concurring, wrote separately to note that had the complaint articulated solely a lost-opportunity claim, this panel would have invoked the conflict provisions of MCR 7.215(J). The analysis of the language of MCL 600.2912a(2) that was set forth in *Fulton v William Beaumont Hosp*, 253 Mich App 70 (2002), that this panel was required to follow pursuant to MCR 7.215(J)(1), was rejected by all the justices in the nonbinding plurality decision in *Stone v Williamson*, 482 Mich 144 (2008), and, therefore, the Court of Appeals should critically reexamine *Fulton* when presented with an appropriate case.

NEGLIGENCE — MEDICAL MALPRACTICE — LOSS OF OPPORTUNITY TO SURVIVE OR ACHIEVE A BETTER RESULT.

A medical malpractice plaintiff seeking recovery for loss of an opportunity to survive or achieve a better result must show that the alleged malpractice reduced the opportunity by more than 50 percent; the difference between the opportunity before the malpractice and the opportunity after the malpractice must be greater than 50 percent (MCL 600.2912a[2]).

*Weiner & Cox, PLC* (by *Cyril V. Weiner* and *Joel A. Sanfield*), and *Richard E. Shaw* for Jayne Lanigan.

*Tanoury, Corbet, Shaw, Nauts & Essad, P.L.L.C.* (by *Linda M. Garbarino* and *Cullen B. McKinney*), for Huron Valley Hospital, Inc.

*Kerr, Russell and Weber, PLC* (by *Stephen D. McGraw* and *Joanne Geha Swanson*), for Steven D. Belen, D.O.

Before: GLEICHER, P.J., and K. F. KELLY and MURRAY, JJ.

K. F. KELLY, J. In this medical malpractice case, plaintiff Jayne Lanigan claims that defendants Huron Valley Hospital, Inc. (Huron Valley), and Steven D.

Belen, D.O. (Dr. Belen), breached the applicable standard of care and thus caused plaintiff to require a heart transplant in lieu of bypass surgery. Plaintiff appeals as of right the trial court's order granting summary disposition for defendants.[1] We reverse and remand.

I. FACTS

Around 9:00 a.m. on September 8, 2004, plaintiff experienced difficulty breathing while jogging and she collapsed. A bystander called 911 and an ambulance transported plaintiff to Huron Valley. When plaintiff arrived at Huron Valley at approximately 9:40 a.m., she complained of chest pains, shortness of breath, and nausea. An initial electrocardiogram (EKG) revealed a possible septal wall infarct, or heart attack. Given plaintiff's medical history and presentation—she was then 41 years old, athletic, and had no history of heart disease—the emergency room physician initially believed plaintiff had a pulmonary embolism. This diagnosis, however, was ruled out after a computerized axial tomography (CAT) scan of plaintiff's thorax at approximately 10:30 a.m. Plaintiff continued to suffer from severe respiratory distress and her condition worsened.

Given plaintiff's status, Dr. Belen, a cardiac specialist, was summoned, and he saw plaintiff at approximately 10:45 a.m. Pursuant to Dr. Belen's order, plaintiff had a 2-D echocardiogram,[2] which revealed decreased wall motion in the right ventricle of plaintiff's heart, suggesting that plaintiff had had a heart attack. Dr. Belen administered dopamine in order to stabilize plaintiff's condition and she was transferred to

---

[1] Throughout this opinion, "plaintiff" refers to Jayne Lanigan; the claims of her husband, Greg Lanigan, are derivative in nature.

[2] A 2-D echocardiogram is essentially an ultrasound of the patient's heart.

the intensive care unit. Although Huron Valley was not equipped to perform emergency invasive bypass surgery, no arrangements for a transfer to a different hospital were made at that time.

Before administering any thrombolytic therapy, or drugs used to break down blood clots, for the treatment of a heart attack, Dr. Belen ordered a CAT scan of plaintiff's head at 2:15 p.m. Dr. Belen was concerned that plaintiff may have suffered from an aneurysm because of her history of a closed head injury, which could contraindicate any thrombolytic therapy. If the CAT scan was negative, plaintiff was to be administered Retavase, a thrombolytic drug intended to improve ventricle functioning after a heart attack. The results of the CAT scan were negative and plaintiff was administered Retavase at 5:00 p.m. Dr. Belen believed that plaintiff might stabilize as a result of the Retavase and that a transfer would not be necessary. However, plaintiff's condition did not stabilize and Dr. Belen then decided to transfer plaintiff to a hospital equipped to perform emergency bypass surgery.

Plaintiff was transferred to Beaumont Hospital (Beaumont), arriving at approximately 10:30 p.m.[3] Upon her arrival, doctors discovered that bypass surgery was not possible because of irreparable damage to plaintiff's cardiac tissue. Plaintiff then underwent surgery for the placement of a ventricle assist device. Afterward, Beaumont transferred plaintiff to the University of Michigan hospital, where it was determined that plaintiff would need a heart transplant. Plaintiff received a heart transplant in December 2004. Since receiving her heart transplant, plaintiff has had to take

---

[3] Plaintiff's family had requested that she be transferred approximately eight hours earlier.

immunosuppressant drugs every day, has had difficulty with daily tasks, and cannot return to work.

Plaintiff then filed this lawsuit. In her complaint, plaintiff alleged that defendants' actions breached the applicable standard of care, thus causing plaintiff to lose an opportunity for a better result, i.e., receiving a cardiac bypass and a longer life expectancy as opposed to a heart transplant and a shorter life expectancy, and, in addition, causing plaintiff direct harm. In contending that defendants failed to timely diagnose the heart attack, timely order thrombolytic therapy, and timely transfer her to a facility capable of emergency cardiac intervention, plaintiff alleged in her complaint:

> 25. That Plaintiff Jayne Lanigan sustained personal injuries as a direct and proximate result of Defendant's [sic] negligence and malpractice as herein alleged.
>
> * * *
>
> 27. That at all time material herein, due to the negligence of the Defendant [sic], their agents, servants and/or employees, either real or ostensible, Plaintiff lost an opportunity to survive and/or an opportunity to achieve a better result that was greater than 50%.

Defendant Dr. Belen moved for summary disposition, with which Huron Valley concurred, arguing that no material factual dispute exists that plaintiff did not suffer a lost opportunity to achieve a better result greater than 50 percent.[4] In defendants' view, plaintiff's opportunity to survive actually increased as a result of the heart transplant because patients receiving heart transplants have a 65 percent chance of surviving 10 years, whereas patients, like plaintiff, suffering from

---

[4] The motion for summary disposition did not address any allegations of the "traditional" medical malpractice claim, i.e., one that does not involve a claim of lost opportunity.

cardiogenic shock survive only 30 percent of the time. Notably, neither Dr. Belen nor Huron Valley moved for summary disposition regarding plaintiff's traditional medical malpractice claim. The trial court agreed with defendants and entered an order granting their motion. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition based on lack of a material factual dispute is properly granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10); *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 31; 651 NW2d 188 (2002). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In deciding a motion under MCR 2.116(C)(10), we must consider all the evidence, affidavits, pleadings, and admissions in the light most favorable to the nonmoving party. *Rice, supra* at 30-31.

## III. STATISTICAL EVIDENCE

Before reaching the substance of plaintiff's lost-opportunity claim, we first briefly consider plaintiff's argument that defendants presented misleading statistics to the trial court.[5] Dr. Belen argued in his brief in support of the motion for summary disposition that

---

[5] It is unclear from the trial court's opinion and order granting summary disposition whether it was swayed by defendants' interpreta-

plaintiff's opportunity to survive actually increased as a result of the heart transplant because patients receiving heart transplants have a 65 percent change of surviving 10 years, whereas patients suffering from cardiogenic shock have a fatality rate of 70 percent. However, the deposition testimony of plaintiff's expert, Dr. Daniel Wohlgelernter, indicates that the 70 percent mortality rate applies to "all-comers," which would include individuals in exceedingly poor health, unlike plaintiff. Just as a defendant must take a frail plaintiff as he finds him, so must a defendant take a strong and healthy plaintiff as he finds him. *Richman v City of Berkley*, 84 Mich App 258, 262; 269 NW2d 555 (1978); 2 Restatements Torts, 2d, § 461, p 502. In this case, the 70 percent mortality rate was not limited to those similarly situated to plaintiff. Thus, this general statistical evidence was without selective application to plaintiff. Without some connection to the plaintiff, the statistical evidence was, in the context offered and standing alone, only marginally relevant[6] and was an improper basis upon which to grant summary disposition.

### IV. LOST-OPPORTUNITY CLAIM

Next, with respect to plaintiff's lost-opportunity claim, plaintiff argues that the trial court improperly

---

tion of the statistics. The trial court simply stated that plaintiff failed to show that "[p]laintiff's chances of a better result decreased by at least 50%."

[6] Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. It must be material, that is, related to a fact of consequence to the action, and have probative force, that is, have a tendency to make the existence of a fact of consequence to the action more probable or less probable than it would be without the evidence. *People v Sabin (After Remand)*, 463 Mich 43, 57; 614 NW2d 888 (2000).

granted summary disposition because a genuine question of material fact exists. We agree. Regardless of whether a plaintiff alleges a traditional medical malpractice or a lost-opportunity claim, the plaintiff must establish: "(1) the standard of care, (2) breach of that standard of care, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Pennington v Longabaugh*, 271 Mich App 101, 104; 719 NW2d 616 (2006). Thus, a lost-opportunity claim is properly asserted where, either standing alone or together with a traditional medical malpractice claim, a plaintiff can demonstrate, by a preponderance of the evidence, that a defendant's negligence proximately caused the complained of injury. *Falcon v Mem Hosp*, 436 Mich 443, 461-462; 462 NW2d 44 (1990) (LEVIN, J.) (injury resulting from medical malpractice is not only physical harm, but also includes the loss of opportunity of avoiding physical harm.) With respect to lost-opportunity claims, the second sentence of MCL 600.2912a(2) expounds on the "injury" that plaintiff must show. That provision provides:

> In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. *In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%.* [Emphasis added.]

Much confusion exists regarding the meaning of the last sentence of this provision. In *Fulton v William Beaumont Hosp*, 253 Mich App 70, 77-78; 655 NW2d 569 (2002), this Court examined whether the second sentence requires a plaintiff "to show only that the initial opportunity . . . before the alleged malpractice was greater than fifty percent . . . or, instead, that the

opportunity . . . was reduced by greater than fifty percent because of the alleged malpractice[.]" The *Fulton* Court determined that the latter interpretation was more aligned with the Legislature's intent, and thus held that the difference between the opportunity pre-malpractice and the opportunity post-malpractice must be greater than 50 percent. *Id.* at 82. For example, in *Fulton*, the plaintiff had an 85 percent chance of survival pre-malpractice and a 65 percent chance of survival post-malpractice, and, therefore, the plaintiff's lost-opportunity claim failed because the plaintiff only suffered a 20 percent loss, which is less than the 50 percent loss required by the statute. *Id.*

More recently, our Supreme Court interpreted the meaning of MCL 600.2912a(2) in a plurality decision, *Stone v Williamson*, 482 Mich 144; 753 NW2d 106 (2008), in which all the justices expressed a belief that *Fulton* was wrongly decided, albeit for different reasons. *Id.* at 164 (TAYLOR, C.J.). Chief Justice TAYLOR, joined by Justices CORRIGAN and YOUNG, concluded that lost-opportunity claims do not exist because the second sentence of MCL 600.2912a(2) is so incomprehensible that it is judicially unenforceable and, further, because the Legislature reinstated the traditional elements of medical malpractice when it amended the statute after the Supreme Court adopted the lost-opportunity doctrine in *Falcon, supra. Stone, supra* at 160-162 (TAYLOR, C.J.). Justice CAVANAGH, joined by Justices WEAVER and KELLY, concluded that the Legislature did not reject the lost-opportunity doctrine; rather, its post-*Falcon* amendment merely established a threshold for lost-opportunity claims. *Id.* at 169-170 (CAVANAGH, J.). Further, when read in light of the Court's decision in *Falcon*, Justice CAVANAGH opined that the "injury" referred to in the second sentence of the statute is the lost opportunity itself, and the opportunity to be measured

is the pre-malpractice opportunity to survive or achieve a better result by 50 percent. *Id.* at 169-172. Conversely, Justice MARKMAN, the only justice to believe that *Stone* involved a true lost-opportunity claim, found that the provision was enforceable but would apply Dr. Roy Waddell's calculation to determine whether the lost opportunity was greater than 50 percent. *Id.* at 186 (MARKMAN, J.); see also Waddell, *A doctor's view of "opportunity to survive":* Fulton's *assumptions and math are wrong*, 86 Mich B J 32, 33 (March, 2007). Because the majority of the justices determined that the plaintiff's claim in *Stone* was not a lost-opportunity claim, but an ordinary medical malpractice claim, the issue of the correctness of *Fulton* was not properly before the Court. *Stone, supra* at 164 n 14, (TAYLOR, C.J.). Accordingly, because the correctness of *Fulton* was not properly before the Court and because *Stone* is a plurality opinion, *Stone* is not binding on this Court and it does not establish a point of law. *Negri v Slotkin*, 397 Mich 105, 109; 244 NW2d 98 (1976); *Fogarty v Dep't of Transportation*, 200 Mich App 572, 574-575; 504 NW2d 710 (1993). Therefore, the prevailing analysis for lost-opportunity cases remains that set forth in *Fulton*, *Stone, supra* at 164 n 14 (TAYLOR, C.J.), and regardless of whether we think *Fulton* was properly decided we are bound to follow it. MCR 7.215(J)(1); *Harvey v Harvey*, 257 Mich App 278, 301 n 6; 668 NW2d 187 (2003).

In the present matter, Dr. Wohlgelernter testified in his deposition that patients in cardiogenic shock only have a 30 percent chance of survival. Plaintiff's other expert, Dr. Douglas Zusman, testified that plaintiff's 10-year survival rate after her heart transplant is 65 percent. Given these statistics, defendants assert that plaintiff's chances of survival actually increased rather

than decreased as a result of the heart transplant.[7]
Conversely, plaintiff points to other statistics showing
that her chances of survival decreased more than 50
percent as a result of the alleged malpractice. In an
affidavit, Dr. Wohlgelernter further indicated that less
than 10 percent of transplant patients survive 25 years
after transplant surgery, whereas more than 60 percent
of patients receiving bypass surgery will survive over 25
years. Pre-malpractice then, i.e., assuming plaintiff had
timely received a bypass, plaintiff had more than a 60
percent chance of surviving 25 years or more, whereas
post-malpractice, i.e., with the heart transplant, plain-
tiff's chances of surviving more than 25 years dropped
to less than 10 percent. The difference is 50 percent or
more, sufficient for a lost-opportunity claim under the
statute as construed in *Fulton.*

Even were we to construe Dr. Wohlgelernter's testi-
mony regarding the likelihood that plaintiff would have
avoided a heart transplant under a loss of opportunity
analysis, Dr. Wohlgelernter's nonquantitative state-
ments convey a greater than 50 percent chance of a
better result. In fact, the statement that plaintiff
"would have suffered little or no functional deficit[]"
had she received a bypass rather than a heart trans-
plant, is tantamount to a nearly 100 percent better
result, i.e., maintaining one's own heart and living an
unaffected life pre-malpractice. As a result of defen-
dants' alleged malpractice, plaintiff had no chance (zero

___

[7] We note that a living plaintiff cannot recover for a loss of opportunity
to survive under the statute. *Wickens v Oakwood Healthcare Sys*, 465
Mich 53, 62; 631 NW2d 686 (2001). This is because, under the provision's
plain language, a lost-opportunity claim must include those injuries
actually suffered and cannot include the possibility of future injuries,
such as death. *Id.* 60-61. However, this does not preclude courts from
considering the plaintiff's risk of death as part of the calculation of the
"opportunity to achieve a better result," as is the case here.

percent) to save her heart. Thus, a reasonable interpretation of these statements is that plaintiff's lost opportunity for a better result, keeping her own heart, is close to 100 percent.

Given the conflicting interpretation of the statistics in this case, we are of the view that a genuine issue of material fact exists because reasonable minds could differ with regard to the meaning of the statistics. *Gen Motors Corp, supra* at 183. Therefore, we conclude that the matter is most appropriate for the jury to decide. Accordingly, summary disposition for defendants was improper and we reverse the trial court's order.

## V. TRADITIONAL MEDICAL MALPRACTICE CLAIM

Lastly, plaintiff argues that her claim is a traditional medical malpractice claim and that we should consider it as such. Indeed, in light of our Supreme Court's decision in *Stone,* before analyzing a case under the lost-opportunity doctrine, we must first determine whether the case, in fact, presents a lost-opportunity cause of action. Although plaintiff's complaint is no model of clarity, our review of the record indicates that plaintiff sufficiently pleaded an ordinary medical malpractice claim, as well as a lost-opportunity claim, in her complaint below.[8] Dr. Belen's summary disposition motion focused entirely on the lost-opportunity portion of plaintiff's claim. Thus, the parties did not address plaintiff's traditional negligence claim in the trial court. Subsequently, the trial court dismissed plaintiff's entire claim on the basis of MCL 600.2912a(2). The dismissal was erroneous given that plaintiff's ordinary medical malpractice claim remained to be decided. However,

---

[8] In our view, and given our Supreme Court's holding in *Stone, supra,* it would have been helpful had plaintiff pleaded her ordinary negligence and lost-opportunity claims as separate counts in the complaint.

because the issue was not considered by the trial court, it is not properly preserved and it is not now properly before this Court. *People v Herrick*, 277 Mich App 255, 259; 744 NW2d 370 (2007). Accordingly, we remand to the trial court for further proceedings regarding plaintiff's traditional medical malpractice claim.

Reversed and remanded. We do not retain jurisdiction.

MURRAY, J., concurred.

GLEICHER, P.J. *(concurring)*. I fully concur with the reasoning and result announced by the majority in this case. I write separately to observe that had the complaint articulated solely a lost-opportunity claim, it would be incumbent on this Court to invoke the conflict provisions of MCR 7.215(J). As my colleagues today acknowledge, all seven justices who decided *Stone v Williamson*, 482 Mich 144, 164; 753 NW2d 106 (2008) (opinion by TAYLOR, C.J.), rejected the analysis set forth in *Fulton v William Beaumont Hosp*, 253 Mich App 70; 655 NW2d 569 (2002). Because *Fulton*'s central holding clearly lacks the support of a majority of our Supreme Court, this Court should not hesitate to critically reexamine *Fulton* when presented with an appropriate case.