# STATE OF MICHIGAN

# COURT OF APPEALS

QUALITY PERFORMANCE RESOURCE
GROUP LLC,

UNPUBLISHED
May 2, 2017

Plaintiff-Appellee,

v

No. 331692
Saginaw Circuit Court

BAY MILLS COMMUNITY COLLEGE and
BAY MILLS COMMUNITY COLLEGE BOARD
OF REGENTS,

LC No. 13-021483-CK

Defendants-Appellants.

Before: O'BRIEN, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Defendants appeal as of right the trial court's order granting summary disposition in favor of plaintiff and its subsequent judgment implementing the summary disposition order in this contract dispute. We affirm.

Plaintiff is a limited liability company that specializes in providing training and consulting services to public school authorizing bodies. Defendant, Bay Mills Community College Board of Regents, is a public school authorizing body. On October 21, 2005, plaintiff and defendants entered into a written agreement (its second such agreement) whereby plaintiff would provide its services to defendants in exchange for a percentage of the total amount of state school aid and any other funding that defendants used to assess administrative fees to public school academies[1] that it had contracts with. The payments were to be made to plaintiff within ten days after defendants received state school aid payments from the state of Michigan. Defendants were also required to pay plaintiff $400 per month for internet service and $450 per month for office support services. The 2005 contract was set to expire in 2010; however, the parties executed an addendum to the agreement extending it to June 30, 2013.

In November 2013, plaintiff initiated a breach of contract claim against defendants, contending that they failed/refused to pay plaintiff the total amount due and owing for services

---

[1] Also known as "charter schools."

rendered during the 2012-2013 school year. Plaintiff specifically claimed that defendants did not pay the last two invoices sent to them, totaling $269,709.78. Defendants moved for summary disposition under MCR 2.116(C)(10), contending that the last two invoices sent by plaintiff sought a percentage of the school aid payments received by defendants in July and August 2013—two months after the parties' contract expired. Thus, defendants argued, under the clear and unambiguous language of the parties' contract, plaintiff was not entitled to any percentage of the post-contract termination payments. Plaintiff responded that the sought after payments accrued *before* the termination of the contract. According to plaintiff, while the state aid installments may have been *issued* after the parties' contract terminated, defendants calculated its administrative fees based on the total amount of state aid received for a specific school year. The parties' contract contemplated administrative fees payable for the 2012-2013 school year, and the fact that the July and August 2013 state aid installments were issued for the 2012-2013 school year renders them a part of the parties' contract even though they were paid after the contract had expired. Plaintiff moved for summary disposition in its own favor based on the above.

The trial court denied defendant's motion for summary disposition and granted summary disposition in favor of plaintiff. The trial court noted that the fundamental dispute between the parties was whether the contract provided for plaintiff's entitlement to a percentage of the total state aid issued for a specific school year or to a percentage of the total state aid payments disbursed at the time the contract was active. Looking to the parties' contract, the trial court found that the clear and unambiguous language entitled plaintiff to a percentage of the total state aid issued for a specific school year. The trial court noted that state funding for schools for a given school fiscal year lags behind the completion of that actual school year because the state allocates school funds in accordance with the state fiscal year (October 1 through September 30) and that while this may affect *when* defendants must pay the contracted for amounts, it does not affect the total amount owed to plaintiff under the contract.

On appeal, defendants argue that the trial court erroneously granted summary disposition in plaintiff's favor based upon its own rewriting of the parties' 2005 contract. Alternatively, defendants contend that the contract language is ambiguous and that summary disposition was inappropriate in either parties favor. We disagree.

We review de novo a trial court's decision to grant or deny summary disposition. *1300 LaFayette E Coop, Inc v Savoy*, 284 Mich App 522, 524; 773 NW2d 57 (2009). A motion under MCR 2.116(C)(10) tests the factual support for a claim. When reviewing a motion under MCR 2.116(C)(10), the court examines the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determines whether a genuine issue of material fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law, and summary disposition is properly granted. *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 31; 651 NW2d 188 (2002).

Whether contract language is ambiguous and the proper interpretation of a contract both present questions of law that we review de novo. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). When interpreting a contract, we look to the document itself giving the language contained therein it its ordinary and plain meaning. *Wilkie v Auto-*

*Owners Ins Co*, 469 Mich 41, 47–48; 664 NW2d 776 (2003). "[A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law," and "[i]f the language of the contract is unambiguous, we construe and enforce the contract as written." *Coates*, 276 Mich App 503, quoting *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). Courts may not impose an ambiguity on clear contract language. *Grosse Pointe Park v Michigan Muni Liability & Prop Pool*, 473 Mich 188, 198; 702 NW2d 106 (2005). A contract is ambiguous when two provisions irreconcilably conflict with each other, or when a term is equally susceptible to more than a single meaning. *Coates*, 276 Mich App at 503 (citations omitted). Only when contractual language is ambiguous does its meaning become a question of fact. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 504; 741 NW2d 539 (2007).

According to the Revised School Code, a "public school academy" is required to be organized and administered under the direction of a board of directors. MCL 380.502(1). There are limited groups permitted to act as an authorizing body to issue contracts to and organize and operate schools, among which are boards of a community college. MCL 380.502(2)(c). Under MCL 380.502(6):

> An authorizing body shall not charge a fee, or require reimbursement of expenses, for considering an application for a contract, for issuing a contract, or for providing oversight of a contract for a public school academy in an amount that exceeds a combined total of 3% of the total state school aid received by the public school academy in the school year in which the fees or expenses are charged. An authorizing body may provide other services for a public school academy and charge a fee for those services, but shall not require such an arrangement as a condition to issuing the contract authorizing the public school academy.

The "state school aid" referred to in the above provision is paid under the State School Aid Act. MCL 388.1601 *et seq*. Under the State School Aid Act, Michigan appropriates certain sums to public schools and other purposes related to education. MCL 388.1611. The appropriations are allocated to the public schools through the state treasurer in installments on or around the 20th of every month except September. MCL 388.1617b. The payments begin in October of each year and, according to MCL 388.1617b, "[a] district or intermediate district shall accrue the payments received in July and August to the school fiscal year ending the immediately preceding June 30."

The parties originally contracted for services on July 1, 2003, and the contract specified that the contract was for a period of two years. After an initial lump sum payment to plaintiff, further payments were to be made to plaintiff "in equal installments payable within 10 days of each distribution of state aid." The parties executed an addendum to the 2003 contract extending it for three years such that the contract now expired on June 30, 2008. On October 21, 2005, however, the parties entered into a new, but substantially similar contract for services. The contract set out the scope of services plaintiff was to provide (which had been expanded from the original contract and addendum) and detailed payment to plaintiff by defendants as follows:

> 4. <u>Payment</u>. In exchange for the services provided under this Agreement, Client shall pay Consultant the following amounts within ten (10) days after Client receives State School Aid payments from the State of Michigan:

A.  Public School Academies Authorized For Three or less Than Three Years.  During the first three academic school years that a public school academy is authorized by Client, Client shall pay Consultant one and one quarter percent (1.25%) of the total dollar amount of state school aid and any other funding that the Client uses to assess administrative fees pursuant to its charter contracts with public school academies for three or less than three years.

B.  Public School Academies Authorized for More Than Three Years.  Beginning in the fourth academic school year that a public school academy is authorized by Client and continuing each academic school year thereafter, Client shall pay Consultant one percent (1%) of the total dollar amount of state school aid and any other funding that the Client uses to assess administrative fees pursuant to its charter contracts with public school academies authorized for more than three years.

This contract was effective October 21, 2005, and expired, by its terms, on June 30, 2010.  An addendum was signed on November 21, 2008, extending the contract to June 30, 2013.

According to defendants, the above clearly spells out that plaintiff was only entitled to payments from defendants within ten days after defendants received school aid payments from the state and because they received two payments after the June 30, 2013 contract expiration date, they were outside of the parties' contract.  Alternatively, defendants contend that the contract language reveals a latent ambiguity because it is susceptible to two interpretations and that summary disposition in either party's favor was improper.  We see no ambiguity.

According to the latest contract in force, defendants were to pay plaintiff either 1.25% or 1% "of the total dollar amount of state school aid and any other funding that the Client uses to assess administrative fees . . . ."  Under MCL 380.502(6), defendants were permitted to charge an administrative fee to each of its public schools of no more than a "total of 3% of the total state school aid received by the public school academy in the school year in which the fees or expenses are charged."  Thus, the public school academies were to receive state school aid in monthly installments for the school fiscal year (defined, in the Michigan State School Aid Act, as "a fiscal year that commences July 1 and continues through June 30." MCL 388.1606(12)) beginning in October of that school fiscal year and continuing until August of the following calendar year, with the payments received in July and August being accrued to the school fiscal year ending the immediately preceding June 30. MCL 388.1617b.  As a result, the state school aid accrues to a public school academy from October 1 of each year through the following June 30.  In turn, the authorizing body could charge each of its public schools an administrative fee of not more than 3% of the state aid received by that school in that school year.  The parties' contract then calls for defendants to pay plaintiff a percentage of "the total dollar amount of state school aid and any other funding that the Client uses to assess administrative fees . . . ."  Stated differently, defendants were to pay plaintiff a percentage of the 3% of the state aid amount they charged each school.

Defendants contend that nothing in the payment section of the parties' contract entitles plaintiff to payment for a specific school year and that defendants do not assess their administrative fees on a per school fiscal year basis.  It is notable, however, and unlikely a

coincidence, that the parties initial contract term and addendum corresponded with the school fiscal year—June 30 to July 1. And, the parties signed their new contract *during* the addendum period, with no break in services and with the new contract again expiring on June 30.[2]

More importantly, because MCL 380.502 specifically references state aid received during a "school year" and MCL 388.1606 requires schools to accrue state aid payments received in July and August to the fiscal school year ending the prior June, the only logical reading is that defendants are permitted to charge 3% of the total state aid received by a public school academy based on school fiscal year calculations. In order to properly determine what amount it would be permitted to charge any public school academy for administrative fees under MCL 380.502(6), defendants would have to know "the total state school aid received by the public school academy in the school year in which the fees or expenses are charged" and base its percentage on that yearly amount. Defendants have not suggested any other reading of the term "school year" in the above other than "school fiscal year" and, indeed, no other reading makes any logical sense. And, the parties contract clearly spells out that plaintiff is then entitled to a percentage of "the total dollar amount of state school aid and any other funding that the Client uses to assess administrative fees." Defendants received specific administrative fees under contracts with its public school academies. According to the statute, that fee cannot be more than 3% of the total state school aid the public school academy received *in the school year* in which the fees or expenses are charged. And, defendants are contractually bound to pay plaintiff a percentage of the *total* amount of state aid it *used* to determine its administrative fee, i.e., 3% of the state aid each public school academy received *in the school year* in which defendants are charging them the fee. How defendants elected to detail its administrative fees on its books or how it elected to actually assess their administrative fees (as separately monthly fees, for example) is irrelevant to its obligation under the contract to pay plaintiff a percentage of the "total dollar amount of state school aid and any other funding that the Client uses to assess administrative fees . . . ."

It is true that the parties' contract calls for payment to plaintiff "within ten (10) days after Client receives State School Aid payments from the State of Michigan." That provision, however, simply details when the payments are due to plaintiff—not how they are calculated or the amount payable.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens

---

[2] We would further note plaintiff's contention in support of its position that their contracts and past practices contemplated payments based upon the school fiscal year that, although their contract initially began on June 30, 2003 and defendants received state aid payments in July and August of 2003, plaintiff did not receive a percentage of those payments. Defendants do not dispute the lack of payment to plaintiff out of the July and August 2003 state aid payments.