CIVIC ASSOCIATION OF HAMMOND LAKE v
HAMMOND LAKE ESTATES NO 3 LOTS 126-135

Docket No. 264249. Submitted February 7, 2006, at Detroit. Decided May
18, 2006, at 9:05 a.m.

The Civic Association of Hammond Lake Estates, a property owners association, brought an action in the Oakland Circuit Court against Hammond Lake Estates No. 3 Lots 126 through 135 (HLE No. 3) and others, seeking injunctive relief to prohibit the use of motorboats on Hammond Lake. Except for HLE No. 3, seven of eight subdivisions near Hammond Lake (HLE Nos. 0, 1, 2, 4, 5, 6, and 7) have deed restrictions against the use of motorboats, and there was a common grantor for all eight subdivisions. The court, Colleen A. O'Brien, J., denied the defendants' motion for summary disposition based on the lack of deed restrictions in HLE No. 3, and granted summary disposition for the Civic Association. HLE No. 3 and some of the other defendants appealed.

The Court of Appeals *held*:

1. The original common owner of the land that was developed into the subdivisions did not retain the right of ownership and control over the lake on the basis of her failure to grant title to the submerged land to a third party. Riparian ownership rights are not alienable, severable, divisible, or assignable apart from the land that includes or is bounded by the natural watercourse. At most, the common owner reserved to herself and her heirs a right of access to the lake.

2. The Civic Association and its members have standing in this case because they have a sufficient and substantial interest in the common use and enjoyment of Hammond Lake to enforce the deed restriction in HLE No. 0 that prohibits the use of motorboats on the lake. A voluntary association, like the Civic Association, whose sole purpose is to represent the interests of its members, may bring suit to effectuate that purpose regardless of whether the association itself owns any land.

3. The motorboat restriction applies to HLE No. 3 pursuant to the doctrine of reciprocal negative easement. The doctrine is based on the fairness inherent in placing uniform restrictions on the uses of all lots similarly situated, notwithstanding that less than all the

deeds contain the express restriction. The essential elements of a reciprocal negative easement are a common grantor, a general plan, and restrictive covenants running with the land in accordance with the plan and within the plan area in deeds granted by the common grantor. In this case, there was a common grantor, all deed restrictions were recorded within the same two-year period, and the plaintiff's predecessor was formed at the same time for the protection and improvement of a majority of the subdivisions in Hammond Lake Estates. The deed restrictions for the subdivisions contain restrictive covenants running with the land in accordance with the plan in deeds granted by the common grantor, and are nearly identical.

Affirmed.

1. WATERS AND WATERCOURSES — RIPARIAN RIGHTS — ALIENABILITY.

Riparian ownership rights are not alienable, severable, divisible, or assignable apart from the land that includes or is bounded by the natural watercourse.

2. DEEDS — RESTRICTIVE CLAUSES — PROPERTY OWNERS ASSOCIATIONS.

Without regard to whether a common grantor bestows specific powers to an association of property owners, the owners may later act through an association of lot owners to sustain and improve common areas.

3. DEEDS — RESTRICTIVE CLAUSES — RECIPROCAL NEGATIVE EASEMENTS.

A reciprocal negative easement places uniform restrictions on the use of all similarly situated lots, notwithstanding that less than all the deeds contain a specific express restriction; the elements required are a common grantor, a general plan, and restrictive clauses or covenants running with the land in accordance with the plan and within the plan area in deeds granted by the common grantor.

*Daniel Randazzo* for the plaintiff.

*Jackier Gould, P.C.* (by *Jonathan B. Frank* and *Bradley K. Feldman*), for the defendants.

Before: MURRAY, P.J., and CAVANAGH and SAAD, JJ.

SAAD, J. Defendants appeal the trial court's order that granted summary disposition to plaintiff under

MCR 2.116(C)(10).[1] We affirm because the original owner did not retain the riparian rights to the lake, the Civic Association of Hammond Lake Estates (Civic Association) has standing to protect the valuable property rights of its members by enforcing the prohibition on the use of motorboats, and the motorboat restriction is a negative reciprocal easement because the development is part of a comprehensive plan and the restriction applies to all property owners who use and enjoy Hammond Lake.

## I. FACTS AND PROCEDURAL HISTORY

This is an action for injunctive relief brought by a property owners association, the Civic Association. Hammond Lake Estates (HLE) includes eight subdivisions that were platted in the 1950s. The subdivisions are numbered 0 through 7, and there are 221 lakefront and non-lakefront lots in the entire development. The subdivisions in Hammond Lake Estates, except subdivision HLE No. 3, included a deed restriction that lot owners may not use motorboats on the lake. This case arose because some lot owners in Hammond Lake Estates began to use motorboats on the lake. The Civic Association filed a complaint in Oakland Circuit Court and alleged that all the lot owners are estopped from

---

[1] This Court reviews de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998); *Willis v Deerfield Twp*, 257 Mich App 541, 548; 669 NW2d 279 (2003). A motion for summary disposition under MCR 2.116(C)(10) is properly granted if no factual dispute exists, thus entitling the moving party to judgment as a matter of law. *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 31; 651 NW2d 188 (2002). In deciding a motion under subrule C(10), a court considers all the evidence, affidavits, pleadings, and admissions in the light most favorable to the nonmoving party. *Id.* at 30-31. The nonmoving party must present more than mere allegations to establish a genuine issue of material fact for resolution at trial. *Id.* at 31.

asserting that the motorboat restriction does not apply to them and asked for an injunction and a declaration that, though not recorded, the motorboat restriction applies to HLE No. 3 as a reciprocal negative easement.

The lot owners filed a motion for summary disposition and argued that the Civic Association cannot enforce the motorboat restriction. After extensive briefing and oral argument, the trial court issued a comprehensive written opinion that granted summary disposition to the Civic Association, and defendants appeal that order.

## II. ANALYSIS

### A. OWNERSHIP OF HAMMOND LAKE

Defendants contend that the trial court erred when it enjoined residents of HLE No. 0 and HLE No. 1 from using motorboats on Hammond Lake because the motorboat restrictions for these subdivisions were void *ab initio*. Defendants contend that the original common owner, Anna Kirby, retained the right of ownership and control over the lake and that she never granted title to the submerged land to a third party. However, in *Thompson v Enz*, 379 Mich 667, 686; 154 NW2d 473 (1967) (opinion by KAVANAGH, J.), our Supreme Court stated that "riparian rights are not alienable, severable, divisible, or assignable apart from the land which includes therein, or is bounded[] by [,] a natural water course." In *Little v Kin*, 249 Mich App 502, 511; 644 NW2d 375 (2002), this Court reiterated this important rule and observed that "riparian ownership rights may not be transferred apart from riparian land . . . ." On the basis of these principles, Kirby's purported reservation of the exclusive use and control of the lake did not operate as a retention of ownership rights of Hammond

Lake. At most, Kirby reserved to herself and her heirs a right of access to the lake. Accordingly, defendants' argument that the subsequent owners had no right to restrict lake activity by virtue of Kirby's purported reservation of rights is erroneous.

B. STANDING

Defendants further allege that the Civic Association has no standing to enforce the motorboat restriction in HLE No. 0. Defendants do not allege that the association and its member lot owners failed to establish an actual or imminent injury caused by motorboats on Hammond Lake. See *The Meyer and Anna Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 56; 698 NW2d 900 (2005). Rather, defendants assert that the Civic Association may not maintain this action to enforce the deed restriction because it does not own lots in HLE No. 0.

In March 1954, the original HLE subdivision, HLE No. 0, was platted and the deed restrictions for HLE No. 0 were recorded. Section IV addressed restrictions relating to the use of the property and contained the following restriction, "(j) The use of a motor boat as hereinafter defined upon Hammond Lake is absolutely prohibited." Section V defined "motor boat" as "any boat which contains or has attached to it any motor or engine of any character including both inboard and outboard motors."

The plaintiff association was formed as a nonprofit association in 1957 to maintain and provide services for residents in HLE No. 0 and most of the other subdivisions in Hammond Lake Estates. While defendants are correct that the association is voluntary and does not own a lot in HLE No. 0, the association is composed of

lot owners from throughout Hammond Lake Estates and approximately 109 to 120 of the 168 to 170 households in the development are members of the association. Our courts have held that, regardless of whether a grantor bestows specific powers to a property owners association, residents may later act through an association of individual lot owners to sustain and improve common areas. *Wisniewski v Kelly*, 175 Mich App 175, 178-179; 437 NW2d 25 (1989). Further, our courts have held that a voluntary association whose "sole purpose is to represent the interest of its members, many of whom are riparian land owners," may bring suit to effectuate that purpose, regardless of whether the association itself owns any land. *White Lake Improvement Ass'n v Whitehall*, 22 Mich App 262, 272-274; 177 NW2d 473 (1970). See also, *Trout Unlimited, Muskegon-White River Chapter v White Cloud*, 195 Mich App 343, 348; 489 NW2d 188 (1992).

We hold that the Civic Association and its members have a sufficient and, indeed, a substantial interest in the common use and enjoyment of Hammond Lake to maintain this action to enforce the deed restriction in HLE No. 0 that prohibits the use of motorboats on the lake. Clearly, the desirability and value of the Hammond Lake Estates development is directly related to the lake itself, and each lot owner holds a common interest in its use and enjoyment. Indeed, such lots are sold at a premium because of the lake and with notice of restrictions that apply to common areas. To permit one set of lot owners to use the lake in a manner adverse to and inconsistent with the restrictions that apply to all the other properties adversely affects surrounding property owners, the majority of whom are members of the subdivision association. Accordingly, the nonprofit Civic Association, which actively represents the inter-

ests of the landowners, has standing to enforce common restrictions that clearly include a prohibition on the use of motorboats.

### C. RECIPROCAL NEGATIVE EASEMENT

Defendants also say that the doctrine of reciprocal negative easements does not apply to subject residents in HLE No. 3 to the motorboat restriction because the deed restrictions for HLE No. 3 do not contain the motorboat restriction found in the deed restrictions that pertain to the other lakefront subdivisions. In *Sanborn v McLean*, 233 Mich 227, 229-230; 206 NW 496 (1925), our Supreme Court established the criteria for applicability of the reciprocal negative easement doctrine. The Court described the doctrine as follows:

> If the owner of two or more lots, so situated as to bear the relation, sells one with restrictions of benefit to the land retained, the servitude becomes mutual, and, during the period of restraint, the owner of the lot or lots retained can do nothing forbidden to the owner of the lot sold. For want of a better descriptive term this is styled a reciprocal negative easement. It runs with the land sold by virtue of express fastening and abides with the land retained until loosened by expiration of its period of service or by events working its destruction. It is not personal to owners but operative upon use of the land by any owner having actual or constructive notice thereof. It is an easement passing its benefits and carrying its obligations to all purchasers of land subject to its affirmative or negative mandates. It originates for mutual benefit and exists with vigor sufficient to work its ends. It must start with a common owner. Reciprocal negative easements are never retroactive; the very nature of their origin forbids. They arise, if at all, out of a benefit accorded land retained, by restrictions upon neighboring land sold by a common owner. [*Id.* at 229-230.]

In *Dwyer v City of Ann Arbor*, 79 Mich App 113, 118-119; 261 NW2d 231 (1977), rev'd on other grounds

402 Mich 915, 915-916 (1978), this Court recognized that the rationale of the doctrine of reciprocal negative easements "is based upon the fairness inherent in placing uniform restrictions upon the use of all lots similarly situated, notwithstanding that less than all of the deeds contain an express restriction. Thus, the implied restriction arises from the express restriction." The essential elements of a reciprocal negative easement are: "(1) a common grantor; (2) a general plan; and (3) restrictive covenants running with the land in accordance with the plan and within the plan area in deeds granted by the common grantor." *Cook v Bandeen*, 356 Mich 328, 337; 96 NW2d 743 (1959).

The trial court correctly ruled that the motorboat restriction generally applies to HLE No. 3 under the doctrine of reciprocal negative easements. Defendants concede that there existed a common grantor, Hammond Lake Realty Company. Further, a general plan existed as evidenced by the HLE plat recorded in 1954, which showed all the HLE lots in phases No. 0 through No. 7. Also, the deed restrictions for all the subdivisions were recorded in either 1954 or 1955 and the Hammond Lake Estates Corporation, plaintiff's predecessor, was formed in 1955 for the protection and improvement of a majority of the subdivisions in Hammond Lake Estates. Thus, Hammond Lake Estates was developed pursuant to a general plan. Finally, the deed restrictions for Hammond Lake Estates contain restrictive covenants running with the land in accordance with the plan in deeds granted by the common grantor. Indeed, the restrictions for all the subdivisions are nearly identical.[2]

---

[2] Defendants argue that the doctrine of reciprocal negative easements should not apply because the subdivision association does not have clean hands. However, the evidence on which defendants rely does not establish any misrepresentation or impropriety by the Civic Association. For example, the association's representation that the use of motorboats on

Thus, the trial court correctly determined that the motorboat restriction generally applies to HLE No. 3.[3]

Affirmed.

---

Hammond Lake is prohibited is correct. Further, the other alleged improprieties that defendants cite, such as the association's representation that it has authority to pass bylaws, does not establish unclean hands and, in any event, such representations are not directly relevant to this case.

[3] Defendants further assert that the deed restrictions do not prevent the use of electric motors on Hammond Lake. As noted, the deed restrictions define "motor boat" as "any boat which contains or has attached to it any motor or engine of any character including both inboard and outboard motors." The plain language of these provisions clearly encompasses electric motors. Thus, defendants argument fails.